FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUN 26 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

JEAN CARLOS TAVAREZ,

Defendant.

12-CR-473

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in Section 3553(a)(4), the court shall indicate the specific reasons for imposing a sentence different from the Guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in the written order of judgment and commitment." *Id.* Even though the mandatory nature of the Guidelines has been excised and they are now "advisory," *see United States v. Booker*, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "considered the parties' arguments and that it has a reasoned basis for exercising its own legal decisionmaking authority." *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (internal quotations and alterations omitted).

1

On February 23, 2013, defendant Jean Carlos Tavarez pled guilty to Counts One and Two of a two-count indictment, which charged him with importation of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(B)(ii), and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II). After arriving at John F. Kennedy Airport on June 23, 2012 on a commercial flight that originated in Santo Domingo, Dominican Republic, the defendant passed a total of 75 pellets containing cocaine. The total net weight of the cocaine recovered from defendant's body was 754.7 grams.

Tavarez was sentenced on June 10, 2013. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere and the factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (utility of videotape on appeal).

The court finds the total offense level to be twenty-one and defendant's criminal history to be category I, yielding a Guidelines range of imprisonment of between thirty-seven and forty-six months. The calculation of the total offense level included a two-point "safety-valve" reduction, pursuant to 18 U.S.C. § 3553(f), and a three-point adjustment for defendant's acceptance of responsibility. Each count of the offense carried a minimum term of imprisonment of five years, a maximum term of imprisonment of forty years, and a maximum fine of $5,000,000. The defendant and the government conceded—and the court found—that Tavarez satisfied the mitigating factors under 18 U.S.C. § 3553(f), so the mandatory minimum does not apply.

Tavarez, who has been in custody for approximately one year, was sentenced to a term of time served, to be followed by three years' supervised release. As part of his supervised release, defendant is ordered to participate in the CORE Young Adult Program, a program operated by

The Doe Fund, which provides housing, employment training, GED training, medical care, and counseling to homeless men between the ages of 18 and 25. Tavarez's attorney and the social workers at the Federal Defender's Office of Client and Mitigation Services are committed to assisting him throughout this re-entry program.

A $200 ($100 for each count of the offense) special assessment was imposed. No fines were imposed because the defendant does not have any assets, and it is unlikely that he will have any in the future, to pay a fine.

Respectful consideration was given to the Sentencing Guidelines, the Sentencing Commission's policy statements and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). Tavarez was offered $7,000 to transport cocaine from Santo Domingo to the United States. This is a serious offense. Economic need is not a defense to criminal conduct.

Defendant, twenty years old, was born in Santiago, Dominican Republic. Tavarez's parents both reside in the Dominican Republic, but he was raised mainly by a maternal aunt and uncle in Santiago under modest economic circumstances. At age fifteen, Tavarez suffered an epileptic seizure and was hospitalized. He attempted suicide shortly thereafter and was hospitalized for two weeks; he then resided for a short time with his mother. Defendant continues to take medication for epilepsy on a daily basis.

At age sixteen Tavarez moved to this country with his father and attained United States citizenship as a result of his father's citizenship. His father disappeared shortly thereafter. He

3

resided with a maternal great-uncle in Boston for about four months, where he attended high school, which he found difficult due to his lack of proficiency in the English language. He later returned to the Dominican Republic to try out for a Dominican baseball team. Due to his epilepsy, he was not chosen. He then returned to his uncle's residence in Boston. After several months, defendant left his uncle's home and moved to New York City in an attempt to make contact with his father. This attempt at reconciliation was rebuffed. Defendant was homeless for five months prior to his arrest for the instant offense, often sleeping in automobiles.

Sometime after May 2010 but prior to the instant offense, the defendant smuggled an unknown quantity of heroin into the United States from the Dominican Republic. Because the amount of heroin smuggled on that trip is not known, it was not factored into the defendant's Guideline calculations.

Besides his uncle in Boston, who has not been supportive of the defendant since his arrest, Tavarez has no relatives in the United States. Defendant has never been married and is not involved in a romantic relationship. He has no children.

Tavarez sought psychological treatment in the Dominican Republic after his suicide attempt. He reports having attended a "special school" there. While homeless, defendant drank alcohol and smoked marijuana daily. He is ordered to participate in psychological, drug, and alcohol abuse treatment as components of his supervised release.

Under Section 3553(a)(2)(B), a sentencing court must consider two major considerations: general and specific deterrence. General deterrence is satisfied by the sentence imposed; it sends a clear message that importing drugs into the United States will result in imprisonment, the stain of a federal criminal conviction, and a period of stringent supervised release. Specific deterrence has been substantially achieved. Defendant has expressed genuine remorse for his conduct and

understands the gravity of his actions. He understands that he has a difficult re-entry road ahead and is grateful for the opportunity to improve his life through supervised release.

It is the court's hope that Tavarez will lead a law-abiding life based on his expressed desire not to disappoint any of the people who have helped—and continue to seek to help—him.

Jack B. Weinstein
Senior United States District Judge

Dated: June 11, 2013
      Brooklyn, New York